[Civ. No. 24250.   Second Dist., Div. Two.   Aug. 19, 1960.]

EDWARD SIDEBOTHAM AND SON, INC. (a Corporation) et al., Appellants v. LINDEN H. CHANDLER et al., Defendants and Respondents; CHANDLER'S PALOS VERDES SAND AND GRAVEL COMPANY (a Corporation), Intervener and Respondent.

Joseph E. Madden and Thomas M. Parrington for Appellants.

Clarence S. Hunt, Clifton A. Hix and Elizabeth Hix for Respondents.

KINCAID, J. pro tem.*—Appeal is taken herein by plaintiffs Edward Sidebotham and Son, Inc. (hereinafter referred to as Sidebotham), Alfred C. Mueller and C. E. Christopher, from a judgment entered herein in favor of Charles W. Shepard, defendant, and Linden H. Chandler and Chandler's Palos Verdes Sand and Gravel Company, a corporation (hereinafter referred to as Chandler Company), defendants and respondents. Sidebotham is a corporation in the business of producing and selling sand and gravel with outstanding one class capital stock of 1,000 shares. The by-laws provide for three directors to be elected at an annual meeting of the stockholders to be held in June of each year, such directors to serve for one year and until their successors are elected.

The Chandler interests owned between them 500 shares of said stock and in October, 1956, Mueller and Shepard acquired the remaining 500 shares. These latter shares were represented by stock certificate Number 22 for 499 shares in the names of Mueller and Shepard jointly and later the additional share, at their instance, was issued to their attorney Christopher.

At the time of the issuance of the shares jointly to Mueller and Shepard they entered into an independent agreement which provides in part that said certificate so issued to them jointly was to be retained in possession of Mueller with Shepard's shares thereof pledged to Mueller for monies owed him by Shepard for his one-half of the purchase price. Certificate Number 22 was never endorsed by Shepard. Said agreement further provided: "Each party agrees that they will never under any circumstances sell or attempt to sell their interest in said stock, pledge, or encumber the same without the consent of the other and specifically agree that they will never under any circumstances do any act that might directly or indirectly cause the other to become a minority stockholder in the Corporation."

Following acquisition of the stock Chandler was removed as a director and Mueller, Shepard and Christopher caused themselves to be elected with Mueller becoming president of the

*Assigned by Chairman of Judicial Council.

corporation. These directors then voted salaries of $800 per month to Mueller and $200 per month to Christopher.

On November 30, 1957, the Chandler interests, holders of 50 per cent of the stock, gave notice to Shepard, secretary, of their request that a special meeting of the shareholders be called for electing a board of directors. Upon receipt of this request and in accordance with provisions of the by-laws, Shepard then prepared and served a notice of the calling of a meeting of shareholders on December 16, 1957, at the company offices for the purpose requested. All shareholders were thereupon given proper notice of the date and place of such meeting.

Mueller and Shepard had been negotiating between themselves relative to their several business ventures including that of Sidebotham. A written offer by Shepard was submitted to Mueller to settle their various, different obligations and indebtednesses, which was signed by them about December 3, 1957.

This agreement concerned other parties as well and provided for the opening of an escrow and the signing and deposit of various instruments, stock and notices. The portion of said agreement concerning the rights of said parties in Sidebotham stock is contained in paragraph 3 thereof as follows: "Charles W. Shepard will release to Alfred C. Mueller all of his rights in and to Edward Seithbothan [sic] and Sons, Incorporated, including the transfer of his interest in the stock owned jointly between Alfred C. Mueller and Charles W. Shepard. Alfred C. Mueller will give Charles W. Shepard a complete release for and on account of any and all money due Alfred C. Mueller for or on account of the purchase price of the stock owned by them jointly and [sic in] said Edward Seithbothan [sic] and Sons, Incorporated. In addition thereto, Alfred C. Mueller and Charles W. Shepard will cancel each and every contract heretofore entered into by and between them involving either Edward Seithbothan [sic] and Sons, Incorporated, or Torrance Sand and Gravel Corporation, and each will issue to the other a complete release of any and all obligations that might now be in existence, it being the intent and purpose of this offer that all of the transactions hereto had between Alfred C. Mueller and Charles W. Shepard shall be completely resolved and settled, each completely and thoroughly as though they had never heretofore entered into any agreements. This shall cover and refer to any oral agreements as well as written agreements. The escrow shall be held at a

bank to be designated by Charles E. Christopher and John N. Frolich.''

On December 9, 1957, without written notice given, a meeting of the board of directors was held at the office of Christopher at which Shepard refused a request to sign a voting proxy of his stock for the meeting of the shareholders scheduled for December 16, 1957. The next day, without consent of Shepard, Mueller caused their jointly owned stock certificate Number 22 to be cancelled and a new certificate issued in lieu thereof to Mueller and his wife, being certificate Number 26 for 499 shares.

On December 16, 1957, the shareholders' meeting was held in the office of the company and all stockholders of record, including Shepard and certain of their attorneys, were present. After the meeting was called to order Mueller left the room and remained away from the meeting. Christopher objected to the meeting on the ground that it had not been properly noticed and thereupon he left the room. The meeting was then called to order by Shepard acting as secretary-treasurer of the company and upon the call for votes for the election of directors the Chandler interests cumulated their stock and voted 1,500 shares for Linden H. Chandler. Shepard thereupon voted the 499 shares represented by certificate Number 22 owned jointly by Shepard and Mueller, 748½ votes for Mueller and a like number for Shepard.

At conclusion of the trial herein the court entered its findings and judgment against Mueller, ordered him removed from office as director and president of the corporation, barred him from serving as an officer or director thereof for a period of three years, rendered a personal money judgment against him for $3,992.30 and ordered cancellation of his uncashed salary checks from the corporation amounting to $7,476.50.

The issues presented for consideration on this appeal are: (1) Did the written agreement of December 3, 1957, between Shepard and Mueller relative to the disposition of their business interest divest Shepard of any ownership of Sidebotham stock prior to the shareholders' election meeting of December 16, 1957; (2) does the evidence sustain the court's findings that Mueller has so improperly conducted himself as an officer and director of Sidebotham as to justify the order that he should be removed as a director and shall not be permitted to hold office for a period of time as a result thereof; (3) has the trial court exceeded its jurisdiction in rendering a money

judgment against Mueller and in cancelling outstanding salary checks heretofore issued to him on his order.

In its findings, interlocutory decree and order of October 14, 1958, and its findings and judgment of March 11, 1959, the court found that, at the shareholders' meeting of December 16, 1957, Mueller, Shepard and Chandler were regularly elected as directors of the corporation; that it is untrue that Shepard ceased to be a director about December 10, 1957, or that, by reason of the agreement of December 3, 1957, between Mueller and Shepard, the latter sold or transferred any title to his stock in the corporation to Mueller, nor was there any valid issuance of a new certificate as a purported transfer of shares of stock in which Shepard had an interest to Mueller and his wife. The court further found that the said agreement of December 3, 1957, was executory in nature, wherein each agreed to execute certain papers, documents, escrow instructions, releases and to deliver and transfer to the other certain shares of capital stock, including the promise of Shepard to sell and transfer to Mueller all his interest in stock of Sidebotham jointly owned by them and did not constitute an endorsement or transfer of said shares or divest Shepard of his joint interest in said shares represented by certificate Number 22.

Whether the pledge of the stock by Shepard was terminated by the payment of a consideration to him by Mueller, when such consideration was paid and whether the unendorsed stock certificate representing such pledge might be cancelled by Mueller with new shares issued to him in lieu thereof were questions of fact to be determined from their agreement of December 3, 1957, and from other evidence dealing with the question of the intention of such parties. (*Robbins* v. *Pacific Eastern Corp.*, 8 Cal.2d 241, 270 [65 P.2d 42]; *Nicholls* v. *Reid*, 109 Cal. 630 [42 P. 298].)

The evidence herein fully supports the court's findings as to these matters. Where, as here, an agreement to sell corporate stock is conditional and the sale has not been consummated, the person agreeing to sell the stock is still a stockholder of record and is entitled to vote the stock. (*Thomsen* v. *Yankee Mariner Corp.*, 106 Cal.App.2d 454, 456 [235 P.2d 234].)

Under the circumstances here shown, Shepard's act in causing the stock jointly owned by him and Mueller to be voted at the shareholders' meeting of December 16, 1957, one-half for Mueller and one-half for himself, did not violate

their mutual agreement concerning the handling of such stock and did nothing to make Mueller a minority stockholder.

Appellants' argument that parties not in privity with the contract have no right to raise any issue involving rights flowing from it is without merit. The pleadings in the case create such an issue as between the parties who are in direct privity, to-wit, Mueller and Shepard. In the complaint, paragraph VI, Mueller alleges that on December 3, 1957, defendant Shepard sold and transferred to Mueller all of his right, title, interest and estate in and to any and all shares of stock of Sidebotham. He further alleges that on December 10, 1957, the shares of which Shepard was part owner were transferred on the books of the corporation. Shepard's answer to the complaint in paragraph II denies that he sold and transferred to the plaintiff Mueller all of his right, title, interest and estate in and to any and all shares of stock of Sidebotham on December 3, 1957, or at all. He further alleges that he entered into an agreement to sell his interest, but this was an agreement to sell, not an actual sale. The issue was, therefore, directly raised in the pleadings between the parties involved.

On December 30, 1957, Mueller caused to be filed in his name and that of Sidebotham, a complaint in the instant action against Chandler and Shepard for the determination of the validity of the election of directors of December 16, 1957, and for an injunction to restrain defendants from acting as directors or officers of the corporation, or interfering with its operation or management. The court found that said complaint was filed without authorization of the board of directors, was for the purposes of perpetuating himself and Christopher in office, to maintain payment by the corporation of the salaries previously voted them and to promote the private interests of Mueller and not the interests of the corporation; that Sidebotham was not a necessary party to said action.

It was further found that, on December 27, 1957, Mueller withdrew from corporation funds $1,050 which he paid on account of his attorney's fees in prosecuting said action; that such withdrawal was unlawful, unauthorized and a breach of trust by Mueller and contrary to the best interests of the corporation and its shareholders. Further that in violation of a temporary restraining order issued by the court on January 21, 1958, enjoining Mueller from drawing a salary

as officer or manager or from signing checks except in the ordinary course of business, Mueller nevertheless did disburse additional funds of the corporation as purported costs and attorney's fees in said action as follows: April 10, 1958, $758; July 2, 1958, $556.40; September 18, 1958, $1,194.50; that said checks were issued by Mueller for his own gain, without authority of the directors and contrary to and in violation of the said restraining order. The court thereupon found that said corporation is entitled to reimbursement from Mueller of the sum of $3,558.30 for the suit expenses so wrongfully expended; ordered him to surrender 45 uncashed salary checks issued to him since January 21, 1957, in the total sum of $7,476.50 and to reimburse the corporation for any salary checks cashed by him subsequent to January 1, 1958. The court further decreed that Mueller be removed from office or as a director in said corporation and enjoined him from serving as such for three years.

Appellants complain that the foregoing provisions imposing a money judgment against Mueller, cancelling his salary checks and directing his removal and abstention from office for three years were in excess of the jurisdiction of the court. They particularly contend that the temporary restraining order directed to Mueller on January 21, 1958, had expired by operation of law several months before the trial and therefore was not binding upon him. They concede, however, and the record of the case fully bears out, that at substantially every appearance of the parties prior to trial the minutes of the court reflect a stipulation that said restraining order shall remain in full force and effect. In the face of these continuing stipulations little weight may be given to the present contention that the original restraining order may not have been supported by an adequate affidavit or pleading. It is the general rule that an appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defense asserted where an objection could have been made but was not presented to the lower court by some appropriate method (Witkin, California Procedure, 1954, vol. III, p. 2261).

Where a procedural defect could be corrected in the trial court, and no objection is made in that court, it is generally held that the complaining party has waived his right to object and may not successfully raise the point on appeal. (*Nanny* v. *Ruby Lighting Corp.*, 108 Cal.App.2d 856, 859 [239 P.2d 885].)

■ Here all parties construed the restraining order to fully be effective and a party cannot now for the first time on appeal assert a claimed procedural defect which had it been called to the attention of the opposing parties or the court prior to or during the trial, might have been corrected. (*Asnon* v. *Foley*, 105 Cal.App. 624, 629 [288 P. 792] ; *Greiss* v. *State Investment & Ins. Co.*, 98 Cal. 241 [33 P. 195].)

■ Appellants further object to that portion of the findings and judgment ordering the removal of Mueller as director on the ground that the first amended complaint in intervention filed by Chandler Company sought his suspension rather than his removal and that such pleading, with the supplemental complaint in intervention, was not a shareholders' derivative suit of a character permitting the court to make such an order. As to the latter point, however, the court properly found that although Sidebotham may have been a proper party to the action filed by Mueller it was not a necessary party thereto, and inasmuch as said corporation had been made a party in said action in was unnecessary for plaintiff in intervention, by filing its first amended complaint in intervention, to name the corporation as a party thereto ; that such amended pleading did constitute and is a derivative action brought on behalf of said corporation and the shareholders thereof other than Mueller. It is further obvious that Chandler's company, the plaintiff in intervention, was a shareholder holding more than 10 per cent of the outstanding voting shares of the corporation and was entitled to seek the relief in question. (Corp. Code, § 811.)

■ An action to determine the validity of a corporation shareholders' election is equitable in nature and the court will administer complete relief and adjust the case in all of its branches in order to prevent multiplicity of action. (*Boericke* v. *Weise*, 68 Cal.App.2d 407, 411 [156 P.2d 781].) ■ The action of the trial court is in accord with the general rule that a court of equity, having once acquired jurisdiction, will adjust all the differences between the parties arising from the causes of action in order to do complete justice and prevent further litigation. (*Sears* v. *Rule*, 27 Cal.2d 131, 148-149 [163 P.2d 443].) ■ In so adjusting the differences of the parties herein under the existing pleadings, the court, in exercise of its equity powers, and with the other factual prerequisites of section 811, Corporations Code, having been met, was within its jurisdictional prerogative in ordering the re-

moval of Mueller as a director and further barring him from reelection for the specified period.

The evidence fully supports the findings and the judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied September 14, 1960, and appellants' petition for a hearing by the Supreme Court was denied October 17, 1960. Draper, J. pro tem.,* participated therein in place of Dooling, J., who was absent. Schauer, J., Peters, J., and White, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.