[Civ. No. 29541. Second Dist.. Div. Five. May 23, 1967.]

PEARL GARFIELD, Plaintiff and Appellant, v. NANCY RUSSELL, Defendant and Respondent.

■■■■■■

■■■■■■■■■■■■

■■■■■■■■■

Allan D. Norkin for Plaintiff and Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendant and Respondent.

KAUS, P. J.—The plaintiff in this personal injury action appeals from a judgment in favor of defendant which followed an adverse verdict by a jury.

On August 3, 1962, there was a collision between vehicles operated by the respective parties at the intersection of Burton Way and Foothill in Beverly Hills. The intersection was controlled by signals. Each party claimed at the trial that she entered on the green light. Other things being equal one would think that plaintiff had the better on the issue of liability, since she produced a police officer who testified that after the accident the defendant admitted to him that she had entered on the red light.

It appears that plaintiff had three different insurance policies which to some extent paid for her medical expenses. The exact amount of reimbursement she received from these collateral sources is not clear from the record before us, but it is a fair inference that at the very least some of her visits to her doctor did not cost her very much and that she perhaps even made a slight profit.

Defendant at no time claimed that she was entitled to have any reimbursement received by the plaintiff deducted from the total amount of damages the jury might award. The law on that point was too clear to make it worth anybody's time to argue to the contrary. (*Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198] and cases cited therein; for a criticism of the rule see Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law,* 54 Cal.L.Rev., p. 1478.) Defendant did contend, however, that the evidence was relevant on the issue of plaintiff's "motive" in seeking medical aid. (Cf. *McDaniel* v. *Dowell,* 210 Cal.App.2d 26, 34-35 [25 Cal.Rptr. 140].) Plaintiff contended that such evidence of compensation from a collateral source is so prejudicial that it had to be excluded, even though logically relevant on a substantive issue or on the question of her credibility.

Plaintiff's attorney brought up the problem in chambers just before he concluded his client's direct examination. The court said it would take the matter under advisement and requested defendant's attorney to defer going into plaintiff's insurance policies for the time being. He agreed, but before the court had advised counsel what its ruling would be, on cross-examination of plaintiff she was asked: 1. whether it was true that two months after the accident her own company had sent her to a certain doctor who had told her that there was nothing wrong with her as a result of this accident; and 2. whether her own insurance company had not stopped paying her medical bills. An objection was first overruled, but eventually, after a nonresponsive answer, sustained on the ground of irrelevancy. Immediately thereafter defense counsel asked her point blank whether it was not true that she actually had three different policies paying her bills. Again an objection was sustained. Defense counsel then made an offer of proof at the bench. Again plaintiff's objection was sustained. Yet immediately upon resuming testimony defense counsel launched into a series of questions which, over repeated unsuccessful objections, developed the following matters:

1. That somebody representing one of plaintiff's insurance companies had written her a letter in which the reasonableness of her doctor's charges and those of her hospital were questioned.

2. That plaintiff never discussed her doctor's charges with him after she received the letter; and

3. A denial by plaintiff that the reason why there was no such discussion was that she was not paying the bill.

Then there came a direct question concerning the terms of one of her policies. There was another objection and a long argument in chambers. The court finally ruled as follows: "You have a right to show that *the doctor* was motivated by the existence of medical pay and hospitalizing and the amount of his charges *but not this particular person* . . . ."[1] (Italics added.)

We think that the rulings of the court were, to say the least, inconsistent and were, in part, demonstrably wrong. No plausible reason appears why it is anything but inadmissible

[1] Just what defendant did with this ruling when plaintiff's doctor was on the stand, we do not know, since plaintiff has not brought up his testimony. It is difficult to see, however, how the existence of three policies is less relevant to prove the motive of the patient, who conceivably benefits financially from each visit to the doctor, than it is to prove the motive of the doctor, who personally only gets paid once.

hearsay what a representative of one of plaintiff's carriers told her concerning the reasonableness of hospital charges. The question concerning what the company's doctor told plaintiff should never even have been asked. There is no "duty" on the part of an insured to engage in arguments with a doctor appointed by the company.

Plaintiff's counsel protected his record as well as he could under the circumstances, nor does defendant claim that he failed to do so. The question of plaintiff's policies was brought to the attention of the trial court at the proper time.

If counsel was correct in his contention that the evidence concerning plaintiff's three policies was prejudicial, it was obviously desirable that a ruling be obtained before the policies were mentioned to the jury, even if only in the form of questions. This ruling he sought in chambers. The court asked for time to consider the problem, defense counsel agreed to defer going into the matter until there was a ruling, but by the time it came he had filled the air with questions, some of which plaintiff was ordered to answer, which made it wholly immaterial what the court eventually ruled. Plaintiff did not have the kind of trial to which she was entitled.

Although the challenged evidence all went to the issue of damages, what did get into the record strongly suggested that plaintiff was a grasping woman who was building up a lawsuit. It affected her credibility on all issues.

Our function requires that we be of some assistance to the trial court when the identical problem will surely come up at a retrial. (Code Civ. Proc., § 53.)

We are not concerned with what the law was at the time of the first trial, since the Evidence Code is now in effect and will apply to the retrial. (Evid. Code, § 12.) Evidence that a plaintiff is being wholly or partially compensated for her medical expenses—or perhaps even making money every time she sees her doctor—may obviously be relevant on her motives in seeking medical help and her credibility as a witness, even if only remotely. (Evid. Code, § 780 subd. (f).)[2]

---

[2]The Evidence Code defines "relevant evidence" as follows: " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) We do not imply that such evidence is always relevant. It is no more logical to infer that a patient will needlessly subject himself to dangerous and painful surgery because an insurance company pays ten percent of the cost than it is to reason that a person will drive carelessly because he carries liability insurance.

Pursuant to section 351 of the Evidence Code "Except as otherwise provided by statute, all relevant evidence is admissible." We know of no statute, either in or out of the Code which holds that the type of evidence with which we are concerned is inadmissible;[3] section 352, however, gives the trial court a broad discretion to exclude otherwise admissible evidence if its probative value is outweighed by "substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

It is quite evident that in order to appraise the situation under section 352 the trial court would have to know far more about the nature of the evidence attempted to be shown than was ever disclosed to the court here. The exact terms of the three policies carried by the plaintiff were never fully revealed. It is difficult to see how a trial court can engage in the weighing process enjoined by section 352 without knowing at least that much.

We realize that this is not the kind of reversal plaintiff seeks. Her position is that evidence of compensation from a collateral source is prejudicial as a matter of law, however relevant it may be. We see no merit in her position.

In spite of counsels to the contrary (*Causey* v. *Cornelius,* 164 Cal.App.2d 269, 275-281 [330 P.2d 468]), our Supreme Court still seems committed to the position that reference to liability insurance "may result in prejudice which is difficult, if not impossible, to assess" although such reference is permissible where the fact of liability insurance has a "proper relationship to the issues in the case." (*Hoffman* v. *Brandt,* 65 Cal.2d 549, 554 fn. 2 [55 Cal.Rptr. 417, 421 P.2d 425]).

Members of our profession dedicated to making the adequate award even more so, devote some of their finest thinking to the establishment of such "proper relationships." If evidence of liability insurance is sometimes admissible, in spite of the possibility of prejudice, what reason is there for a different rule when the shoe is on the other foot?[4]

The judgment is reversed.

Hufstedler, J., and Stephens, J., concurred.

A petition for a rehearing was denied June 8, 1967.

---

[3]Section 1155 of the Evidence Code only applies to liability insurance.

[4]It seems obvious that section 352 of the Evidence Code is equally applicable to instances where liability insurance may be relevant on an issue other than "negligence or other wrongdoing."