[Civ. No. 39835. Second Dist., Div. Five. June 28, 1973.]

LEWIS F. MILTON, Plaintiff and Respondent, v.
MONTGOMERY WARD AND COMPANY, INC.,
Defendant and Appellant.

## Counsel

Belcher, Henzie & Biegenzahn and Robert D. Walker for Defendant and Appellant.

Ross, Feinberg & Grossman, Ross, Feinberg, Grossman & Wolf, Bernard Grossman and Mervyn H. Wolf for Plaintiff and Respondent.

## Opinion

**ASHBY, J.**—Montgomery Ward & Co. (hereinafter appellant) appeals from a judgment in favor of Lewis F. Milton (hereinafter respondent) for injuries suffered in a fall on appellant's premises.

Respondent was injured on March 22, 1967, at appellant's store where he had gone to have his automobile's front wheels balanced. He drove to the parking lot outside the Auto Service Center and went into the store to see the service manager with whom he had previously dealt. The service

manager instructed respondent to drive his car to a location indicated by an attendant, and then to proceed to the customer waiting area.

Respondent drove his car into position as directed by the attendant, and he left his car for the purpose of going to the customer waiting area. He closed the car door and somewhere between his fourth and sixth step after he exited from the car, he stepped on some transparent grease or gear oil which was on the floor. As a result, respondent slid towards a bench, grabbed at a barrel for support, and ended up striking his lower back on a tire demounting device and hitting his head on the bench.

While respondent was on the floor, he heard appellant's service manager say: "Why the heck ain't this mess cleaned up? I told you before to clean it up. We have got a man badly hurt. Clean it up now before someone gets killed in this."

Respondent was then transported by ambulance to the Community Hospital of San Gabriel where he was given X-rays. He later was given a chest band, traction, and other therapy. He returned to work after the injury but he was forced to terminate his employment in August 1967.

On October 9, 1968, he underwent surgery at Downey Community Hospital. The surgeon, Dr. Spindle, testified that in his opinion the injury was the cause of a deteriorating condition which led to the necessity of operative intervention and that but for that injury more than likely respondent would not have needed surgery. Prior to the injury respondent had an uncommonly vulnerable neck due to an existing arthritic condition and Dr. Spindle concluded that the injury aggravated that condition.

The jury awarded respondent a judgment in the sum of $30,000. Appellant now contends that prejudicial error was committed by the trial judge in his rulings on the effect to be given admissions made by respondent, and answers to interrogatories given by respondent. In addition, appellant also complains that certain instructions given by the court were not supported by the evidence.

## THE EFFECT GIVEN ADMISSIONS MADE BY RESPONDENT

On November 12, 1968, following the taking of respondent's deposition, he was served with a request for 14 admissions. No answer or objection was made by respondent until April 22, 1971, on the second day of trial. In the purported answer, respondent's counsel claimed lack of knowledge of the request until the first day of trial due to the fact that he had just

been substituted in shortly before the trial and previous counsel failed to transmit the request with the file.[1]

The court refused to accept the late answers and held that the admissions were admitted by default. The court then construed the respondent's late responses as objections to the form of the request for admissions. The court concluded that the following requests were improper as not being within the respondent's knowledge:

"7. On March 22, 1967 there were osteoarthritic spurs along the anterior margins of your lower dorsal vertebral bodies.

"8. On March 22, 1967 x-rays of your person revealed osteoarthritis of your lower dorsal spine with no evidence of a compression injury.

"11. None of the physicians who have treated you can say with reasonable medical certainty that pain in your low back, injury to your kidneys, nervousness, and headaches, or any of these conditions, could have been caused by the accident complained of."

The court ruled that the following request was improper as being too vague:

"3. The place where the accident of which you complain occurred was well lighted."

The court also ruled that the following request was proper in form but did not foreclose respondent from presenting evidence of hospitalizations other than that at San Gabriel Hospital:

"9. Your only hospitalization for the injuries complained of was for approximately one hour and was at the Community Hospital of San Gabriel."

Appellant's basic contention in regard to the requested admissions is that under the provisions of Code of Civil Procedure section 2033, subdivision (a), they are deemed admitted and therefore the trial court erred in its rulings that respondent was not foreclosed from presenting most of his evidence of damages.

Regardless of the reasons expressed by the court for its rulings, we hold that the court did not err in permitting the introduction of respondent's evidence of damages.

Code of Civil Procedure section 2033, subdivision (a), provides that upon

---

[1]Three attorneys of record preceded the trial counsel.

a failure to answer requests for admissions, "[e]ach of the matters of which an admission is requested shall be deemed admitted. . . ." ■ However, after a matter is deemed admitted, the scope and effect of the admission must be determined by the trial court. The trial court has broad discretion in determining the admissibility and relevance of evidence. (*Spolter* v. *Four-Wheel Brake Serv. Co.,* 99 Cal.App.2d 690 [222 P.2d 307]; *Gladstone* v. *Fortier,* 22 Cal.App.2d 1 [70 P.2d 255]; *May* v. *May,* 275 Cal.App.2d 264 [79 Cal.Rptr. 622]; *Garfield* v. *Russell,* 251 Cal.App. 2d 275 [59 Cal.Rptr. 379].)

■ On examination of request for admissions 7 and 8, we find that all respondent admitted was that on March 27, 1967, there were osteo-arthritic spurs on his lower dorsal spine and that X-rays revealed no evidence of a compression injury. These admissions clearly do not preclude the introduction of evidence that there was in fact a compression injury, or damages resulting from the injury. Admission No. 11 was that none of the physicians who treated respondent prior to November 12, 1968, can say with reasonable medical certainty that his condition could have been caused by the accident. Even if that admission is accepted literally, it is merely respondent's opinion. The jury could disagree with that opinion and it obviously did.

Likewise, the admission that the place where the accident occurred was well lighted (admission No. 3) would not foreclose evidence that the respondent was injured by a condition created by appellant's breach of duty, especially since that condition was alleged to be transparent grease or oil which would not be observable regardless of the lighting.

■ After discussion with counsel on the morning of the commencement of trial, the court found Admission No. 9 to be in proper form and therefore binding on the plaintiff. Thereafter the record discloses the following exchange:

"MR. WOLF: For the record, Number 9 with reference to the hospitalization, are we to be bound in terms of our opening statement to the sole and single hospitalization?

"THE COURT: Any hospitalization you want other than this particular hospital. It is deemed admitted at this point that he was one hour at this particular hospital. What other hospitals he went to I have not the slightest.

"MR. WALKER: We have a couple of other problems that may come up and perhaps ought to be handled.

"Now, there is an Interrogatory Number 8 that was served with regard to the Complaint."

Clearly appellant acquiesced in the court's interpretation of the effect and scope of admission No. 9. Furthermore, in its brief appellant has not indicated that it objected to the introduction of evidence of other hospitalizations, nor have we been referred to or found such objections in the record. Appellant cannot now raise this issue on appeal. The rule is stated as follows by Witkin, California Evidence (2d ed. 1966) Introduction of Evidence at Trial, section 1285, page 1188: "Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must *object* at the trial, *specifically* stating the grounds of his objection, and directing the objection to the *particular evidence* which he seeks to exclude. . . . [Citations omitted.]" (Italics theirs.) Obviously, failure to object at all waives the defect. (See also *Edward Sidebotham & Son* v. *Chandler,* 183 Cal.App.2d 823, 830 [7 Cal.Rptr. 216]; *Russell* v. *Geis,* 251 Cal.App.2d 560, 570 [59 Cal.Rptr. 569]; *Perry* v. *McLaughlin,* 212 Cal. 1, [297 P. 554].)

Consistent with appellant's apparent acquiescence in the court's ruling is the fact that appellant subpoenaed and obtained all of respondent's hospital records in June 1969, more than one year before the trial, even though respondent was at that time already in default on the request for admissions. In addition, Dr. J. F. Feldman, appellant's expert who examined respondent, testified that in preparing his report of September 26, 1969, he had the results of appellant's myography and surgery which he was asked to correlate with the history that he had received. No injustice resulted from the introduction of the evidence of other hospitalization. The court's ruling merely permitted the jury to determine the issues on their merits.

THE EFFECT GIVEN RESPONDENT'S ANSWERS TO INTERROGATORIES

■ Appellant served interrogatory No. 8 on respondent which reads: "If you claim to have suffered personal injuries in the accident mentioned in your complaint, list all such injuries or ailments and symptoms experienced by you." Respondent's answer was: "Fractured ribs, low back injured, kidneys, extremely nervous and jittery; constant headaches." It is obvious that this answer should not preclude respondent from introducing evidence of a neck injury. The possible relationship between headaches and a neck injury is not unreasonable.

■ Appellant's interrogatory No. 23 reads:

"State whether any party or witness known to you or to any of your

representatives claims to have heard any statement or statements by any of the defendants herein or any agent of a defendant herein concerning the manner in which the accident mentioned in your complaint occurred, or the person or persons at fault in such accident, and further state:

"a. The name and address of any such party or witness;

"b. The substance of such statement or statements;

"c. The date and place in which such statement was made."

The respondent answered: "None known at this time."

Since the respondent himself intended to be a witness and since he intended to testify as to the admission of the appellant's service manager which we have already referred to, the answer should have reflected that knowledge.

Appellant argues that the trial court erred in permitting respondent's testimony regarding statements made concerning the accident. There is no merit to that contention.

In *Thoren* v. *Johnston & Washer,* 29 Cal.App.3d 270, 273 [105 Cal. Rptr. 276], the plaintiff wilfully omitted from his answer to interrogatories the name of a witness. The court held that where the omission is wilful the testimony of that witness can be excluded. The plaintiff in *Campain* v. *Safeway Stores, Inc.,* 29 Cal.App.3d 362, 366 [104 Cal.Rptr. 752], stated in an answer to an interrogatory that she was not making a claim for loss of earnings. In her deposition she stated that she was not working at the time of the accident. The Court of Appeal granted defendant a new trial on the issue of damages on the ground that defendant was genuinely surprised by the introduction of evidence of loss of earnings and was thereby prejudiced.

In the instant case respondent testified that he thought interrogatory No. 23 referred to witnesses other than himself. His inadvertent failure to respond with technical perfection is very different from a wilful failure to respond to an unambiguous interrogatory.

Furthermore, there is no showing that appellant was surprised by respondent's testimony. The record shows that respondent stated in his deposition that he had heard a statement by appellant's service manager. We find that

the trial court properly ruled that respondent was not barred from testifying to that statement. To hold otherwise would permit interrogatories to be used as a trap to preclude the person answering from producing his evidence. (*Singer* v. *Superior Court,* 54 Cal.2d 318 [5 Cal.Rptr. 697, 353 P.2d 305].)

## THE LATENT DEFECT INSTRUCTION

■ The following instruction was given: "Where the owner or occupier of land allows a deceptive condition such as transparent grease or oil to exist which constitutes a potential danger to humanity, and where such owner or occupier of land knows or in the reasonable exercise of ordinary care should know of such a deceptive condition, and where such a deceptive condition was not apparent to ordinary humanity which might be deceived thereby into a false step with resultant injuries, such owner or occupier of land may [be] negligent in allowing the deceptive condition to exist in light of the other instructions I am now giving you."

Appellant's first attack on this instruction is that transparent grease is not a deceptive condition. *Touhy* v. *Owl Drug Co.,* 6 Cal.App.2d 64 [44 P.2d 405], held this type of instruction proper where the deceptive condition consisted of a change in elevation in floor level with a consistent checker pattern which concealed the change in floor elevation. Appellant's contention that this instruction applies only where there is a "permanent physical arrangement" is without merit. A floor covered with transparent grease is a deceptive condition. In addition, we note that this instruction in no way takes away the jury's right to determine that there was no grease or oil on the floor nor does it preclude the jury from finding that respondent did not fall because of the deceptive condition.

## THE PUBLIC SIDEWALK INSTRUCTION

The court gave the following instruction: "A customer who is exercising ordinary care and making normal use of a public walkway within the store where this incident occurred has a right to assume it is in reasonably safe condition, unless he knows or reasonably should know it is not in such condition. The exercise of ordinary care does not require him to look fixedly at the walk in front of him nor be on constant lookout for danger. However, he is required to use ordinary care for his own safety and, in that regard, reasonably to use his eye sight and other faculties for his own safety. [¶] Whether plaintiff did use ordinary care and make

reasonable use of his faculties and whether he should have observed the condition which allegedly caused his injury, and avoided it, are questions of fact for you to decide."

■ This instruction was approved for use in sidewalk cases by *Peters v. City & County of San Francisco,* 41 Cal.2d 419 [260 P.2d 55]. The instruction was not improper in the case at bench. Appellant should be held to a standard no lower than the standard applicable to a city for a public sidewalk. The fact that the particular area was an auto service center does not change the duty owed to respondent, especially in view of the fact that he was specifically directed by appellant's employees to walk in that area.

The judgment is affirmed.

Stephens, J., concurred.

**KAUS, P. J.**—I concur in the result, because after reviewing the entire record I conclude that there has been no miscarriage of justice. (Cal. Const., art. VI, § 13.) I cannot, however, subscribe to the majority's implied approval of the trial court's ultraliberal reaction to plaintiff's failure to respond to defendant's requests for admission. It is apparent that neither the trial court, nor this court, can accept that section 2033, subdivision (a) of the Code of Civil Procedure means what it says. It obviously goes against everyone's sense of justice to hold that by failing to deny request 9, plaintiff had admitted away the lion's share of his case as far as damages are concerned.

If neither the bar nor the bench can live with section 2033, it might perhaps be wise if the Legislature and the Law Revision Commission took another look at its provisions.

For present purposes, I am satisfied that defendant went to trial prepared to meet the issues which plaintiff had admitted away, and that no prejudice has been demonstrated.

Concerning the instruction based on language in *Touhy v. Owl Drug Co.,* 6 Cal.App.2d 64 [44 P.2d 405]: by lifting language from that opinion, never intended for the consumption of a jury, plaintiff's counsel managed to convey a somewhat slanted message to that body of laymen. (See *Francis v. City & County of San Francisco,* 44 Cal.2d 335, 341 [282 P.2d 496].) What did the instruction add to the relevant portions of BAJI?

(BAJI No. 8.00 et seq.) To what purpose do the authors of BAJI spend hours drafting emotionally "neutral" instructions, if counsel are to be permitted to smuggle evocative language about dangers "to humanity" into the court's charge?

Again, however, I am unable to say that the error was prejudicial in light of the whole record.

A petition for a rehearing was denied July 19, 1973, and appellant's petition for a hearing by the Supreme Court was denied August 22, 1973.