Filed 11/24/15  Costco Wholesale Corp. v. Tokio Marine & Nichido Fire Ins. Co. Ltd. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOKIO MARINE AND NICHIDO FIRE INSURANCE COMPANY LIMITED, et. al.,<br><br>    Defendants and Respondents. | B250794<br><br>(Los Angeles County<br>Super. Ct. No. BC359837)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

The opinion filed on October 27, 2015, is modified as follows:

On page 6, the last sentence of the second full paragraph is modified to read, "Consequently, Costco defended itself in the Daer lawsuit, which settled in July 2005."

The Petition for Rehearing is denied.  No change in judgment.

_____

BAKER, J.                    TURNER, P.J.                    KRIEGLER, J.

Filed 10/27/15  Costco Wholesale Corp. v. Tokio Marine & Nichido Fire Ins. Co. Ltd. CA2/5 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION, | B250794 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC359837) |
| v. | |
| TOKIO MARINE AND NICHIDO FIRE INSURANCE COMPANY LIMITED, et. al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Timothy R. Sullivan, Geni K. Krogstad, and Lejf E. Knutson for Plaintiff and Appellant.

Gordon & Rees, Jeffrey A. Swedo and Stephanie Alexander for Defendants and Respondents.

Plaintiff and appellant Costco Wholesale Corporation (Costco) sued Tokio Marine & Nichido Fire Insurance Co., Ltd. (Tokio Marine Japan) and Tokio Marine & Nichido Fire Insurance Co., Ltd. (U.S. Branch) (Tokio Marine USA; the two companies together are referred to as Tokio Marine) in 2006. The complaint alleged Costco was insured under the terms of a general liability insurance policy issued by Tokio Marine to Yokohama Tire Corporation (Yokohama). The complaint further alleged that Tokio Marine breached its duty under the policy to defend Costco in a product liability lawsuit filed by a consumer who purchased a Yokohama-manufactured tire sold by Costco. After a bench trial, the superior court determined that Costco was not an additional insured party under Yokohama's insurance policy and entered judgment for Tokio Marine.

Costco appeals, contending that certain of the trial court's factual findings are not supported by the evidence, and that the court misinterpreted certain key contract provisions. We conclude that the trial court's factual findings are supported by substantial evidence, and that Costco fails to establish any legal error under the applicable standard of review. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

*The contracts between Costco and Yokohama*

In October 1994, Yokohama and Costco entered into a form vendor agreement (the VA) to govern Costco's purchase of Yokohama-branded tires for sale in Costco's stores. The VA includes a provision that required Yokohama to cover Costco and its affiliated companies as "additional insureds" under Yokohama's general liability insurance policy.

Costco also decided to sell a Costco-branded tire, and entered into discussions with Yokohama to manufacture that product. After a year-long negotiation, the two companies executed a "Private Label Agreement" (the PLA) in September 1995 whereby Yokohama agreed to manufacture a line of tires carrying Costco's "Kirkland Signature" trademark.

2

The PLA includes an indemnity provision that obligated Yokohama to hold Costco harmless from liability and expense arising from a claim or suit against Costco based on defective design, workmanship, or materials in Yokohama-manufactured products. The indemnity provision stated that it "shall survive termination of this Agreement." In addition, the PLA obligated Yokohama to maintain insurance naming Costco as an additional insured party and to protect Costco from any liability described in the PLA's indemnity provision. The PLA, however, places a limit on Yokohama's obligation to provide insurance, stating that the obligation exists "[s]o long as [Yokohama] agrees to sell or sells any Product to [Costco]." The PLA also contains specific termination and notice provisions. Neither the VA nor the PLA references the other, and both contain an integration clause.

In order to ensure the contractual insurance requirements were met for all of its active vendors, Costco retained an outside service, Insurance Data Services (IDS), to verify vendors' compliance. IDS was tasked with obtaining a current certificate of insurance reflecting the required vendor insurance coverage from all of Costco's "active" vendors. If a current certificate were not on file, IDS would send the vendor a "deficiency letter" requesting a certificate and noting Costco's insurance requirements. On the reverse side of the letters sent by IDS was a space where the vendor could indicate if it were no longer doing business with Costco, in which case IDS would "make them inactive in our system" and no additional letters would be sent. Costco's buyers would also update vendor lists to reflect their status as "active" or "inactive"; this, however, did not happen frequently.

*Costco stops selling Yokohama tires*

Less than a year after executing the PLA, Costco executives traveled to Yokohama's headquarters in Southern California to inform Yokohama of Costco's decision to stop selling all Yokohama-manufactured tires. Yokohama's executive vice president who attended the meeting testified that Costco made it very clear that it was

3

giving "official notice" that it was "discontinuing all business" with Yokohama, and that its decision was final. During the meeting, one of the Costco executives hand-delivered a letter dated June 24, 1996, (the June 1996 Letter) addressed to Yokohama's president and chief executive officer. The June 1996 Letter stated: "It comes with great difficulty that I must inform you that PriceCostco will be discontinuing Yokohama as one of its vendors. This decision is based upon our need to leverage our volume with fewer suppliers and to improve our product mix to remain competitive. [¶] The attached schedule outlines our phase-out plan. Our intention is to afford Yokohama Tire 12 months to prepare for this change."

*Yokohama's 2001 Insurance Policy and the Related Product Liability Litigation*

Approximately five years later, in early 2001, Yokohama's insurance broker, AON Risk Services, Inc. (AON), procured for Yokohama a new commercial general liability insurance policy issued by Tokio Marine USA, effective January 1, 2001, through January 1, 2002 (the Policy). Lisa Christensen was Tokio Marine USA's underwriter for the policy. Tokio Marine USA had not previously insured Yokohama's U.S.-made products.

The Policy obtained by Yokohama from Tokio Marine was structured so that it could cover additional persons or entities as insured parties. Specifically, the Policy incorporated a number of endorsements,[1] including form CG 20 15 11 88 "Additional Insured –Vendors," a general liability endorsement. This "blanket endorsement" made the process of adding (or deleting) additional insured parties less cumbersome. Instead of requiring Tokio Marine to list additional insured parties or to issue individual endorsements naming each vendor as an "additional insured," the blanket endorsement

---

[1]    As discussed *post* at page 14, an endorsement is an amendment to the policy that modifies the basic insuring forms of the policy.

provided insurance coverage to all vendors of tires "where required by contract," that is, where Yokohama had a contractual obligation to provide insurance to the vendor.[2]

IDS, the insurance compliance firm retained by Costco, had continued to send Yokohama deficiency letters requesting current certificates of insurance even after Costco ceased selling Yokohama tires in 1997. Yokohama's practice was to forward these letters to its insurance broker AON, and AON would then prepare and deliver to Costco certificates of insurance naming Costco as an additional insured. Although no representative of AON testified at trial, its files were entered into evidence. These files demonstrated that the AON-issued certificates of insurance naming Yokohama's vendors were often accompanied by an individual vendor endorsement in the vendor's name. The individual and blanket vendor endorsements were identical (even the form number, CG 20 15), except that the "WHERE REQUIRED BY CONTRACT" restriction of the blanket endorsement did not appear on the individual endorsements. Neither AON nor Tokio Marine had access to Yokohama's vendor contracts. Thus, AON sent the individual endorsements accompanying the certificates of insurance to vendors without verifying that they were required by a valid, existing contract with Yokohama.

In early 2001, IDS (on behalf of Costco) and AON (on behalf of Yokohama) exchanged correspondence regarding the status of Yokohama's insurance policy. That is to say, IDS sent letters soliciting an updated certificate of insurance and AON followed up with IDS to determine what additional information Costco required in order to deem Yokohama in compliance with any insurance obligations. AON ultimately forwarded to Costco a certificate of insurance evidencing Tokio Marine's issuance of the Policy, and

---

[2]    The blanket endorsement states that the Section II Policy provision, "WHO IS AN INSURED," "is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to 'bodily injury' or 'property damage' arising out of 'your products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business, . . ." The referenced Schedule identifies the additional insured vendor as any "Person or Organization (Vendor): [¶] WHERE REQUIRED BY CONTRACT," and identifies "Your Products" as "TIRES."

an individual vendor endorsement which named Costco as an additional insured under the Policy (the Costco Endorsement). The Costco Endorsement sent by AON did not include the "Where Required by Contract" language in the blanket endorsement.

Also in early 2001, a Costco customer named Jack Daer (Daer) took his Ford Explorer to a Costco in Arizona to be serviced; Daer had previously purchased a set of Kirkland Signature tires manufactured by Yokohama for the Explorer. Five weeks later, the left rear tire on the Explorer failed, causing Daer to lose control. The vehicle rolled over, and Daer sustained catastrophic injuries.

Daer sued Yokohama, Costco, and others in Arizona state court. He alleged a product liability claim against Yokohama for tire defects, a derivative product liability claim against Costco as seller of a defective tire, and negligence claims against Costco for selling him the wrong size and type of tire for his vehicle and for negligence in its post-sale servicing of the tire. Costco tendered defense of the action to Tokio Marine, claiming it was an additional insured under the Yokohama Policy. Tokio Marine rejected the tender. Consequently, Costco's own insurance carrier, Kemper Insurance Company, defended Costco in the Daer lawsuit, which settled in July 2005.

### *The judgment appealed from*

After a five-day bench trial during which 15 witnesses testified and well over 100 exhibits were admitted into evidence, the court issued a 29-page Statement of Decision. The superior court determined, among other things, that at the time Daer sued Costco, Yokohama was not contractually obligated to provide vendors insurance coverage to Costco, and the Costco Endorsement individually naming Costco as an additional insured did not create coverage. The court entered judgment for Tokio Marine.

## DISCUSSION

On appeal, Costco contends that it had insurance under the "blanket endorsement" to the Tokio Marine policy in 2001 because Costco still had a contractual relationship

6

with Yokohama at that time; according to Costco, the trial court incorrectly concluded that the VA and PLA had been terminated prior to Daer's lawsuit. Costco also argues that it was covered under the Costco Endorsement to the Policy and that the trial court erred when it concluded that AON was not Tokio Marine's actual or ostensible agent for purposes of issuing the Costco Endorsement. Costco further argues that the trial court improperly refused to give dispositive effect to one of Tokio Marine's responses to a Request for Admission propounded by Costco. As a consequence, Costco argues the court mistakenly concluded Tokio Marine was not obligated to defend Costco in the Daer lawsuit. We consider each of these contentions of error.

A. *Substantial evidence supports the trial court's finding that Costco was not covered under the Policy's blanket endorsement*

Where "'extrinsic evidence has been properly admitted as an aid to the interpretation of a contract and the evidence conflicts, a reasonable construction of the agreement by the trial court which is supported by substantial evidence will be upheld.' [Citation.] 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. [Citations.] . . . [¶] The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record. [Citation.]" (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651-652; see also *Crawford v. Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 ["[W]hen a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [factfinder]"].) It is Costco's burden, as the party asserting coverage, to prove that it is an insured. (Evid. Code, § 500; see *Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188; 2 Windt, Insurance Claims and Disputes (6th ed. 2015) § 9:1, Burden of proof.)

1. *Costco Terminated the PLA and VA before the Daer Lawsuit*[3]

As already noted , the Policy's blanket vendor endorsement provided that all of Yokohama's vendors were additional insureds so long as their vendor agreements required Yokohama to provide such coverage.  Costco argues both contracts remained in effect because the June 1996 Letter "did not constitute a 'clear and unambiguous' notice that either the VA or the PLA [was] 'terminated' and did not comply with the PLA's 'Notice' provision."  The trial court rejected Costco's termination argument, finding that at the time Costco tendered the Daer litigation to Tokio Marine, "there was no longer a contractual relationship between Costco and Yokohama" because the June 1996 Letter had worked to terminate that relationship long before.  Ample evidence before the court supports this finding.

Most significant, the June 1996 Letter itself states that "PriceCostco will be discontinuing Yokohama as one of its vendors," and it attached a schedule with a 12-month phase-out of the Yokohama-manufactured tires.  James MacMaster, who attended the meeting at which Costco delivered the June 1996 Letter, understood that Costco's decision to end its relationship with Yokohama was irreversible, and that a competitor of Yokohama's had offered Costco $28 million in incentives to cease doing business with Yokohama.  The decision by Costco executives to fly to California to deliver the June 1996 letter in person—and to include significant expressions of regret in the letter announcing their decision to cease selling Yokohama-manufactured tires ("It comes with great difficulty that I must inform you . . .")— reinforces the trial court's finding that Costco's intent was to terminate all aspects of its business relationship with Yokohama and that Yokohama understood the letter to do just that.

---

[3] Pursuant to the choice of law provisions of both the PLA and the VA, we construe these contracts under Washington law.  The parties analyze the remainder of the issues on appeal under California law, and neither party suggests that Washington law applies to any issue before us other than the interpretation of the PLA and the VA.  We therefore apply California law to resolve the additional issues on appeal.  (See *Garamendi v. Mission Ins. Co.* (2005) 131 Cal.App.4th 30, 41.)

Yokohama's behavior after receiving the June 1996 letter is also consistent with the understanding that the parties' contractual relationship was coming to an end. Correspondence dated September 16, 1997, from Yokohama's National Sales Manager to Costco described how much Costco-branded inventory remained in Yokohama's warehouses and confirmed that Yokohama "should have the inventory cleared by the October 31, cutoff date" set forth in the June 1996 Letter. All sales of Yokohama tires ceased by the end of 1997.

Costco nevertheless argues it did not intend to terminate the VA and the PLA by pointing to the deposition testimony of its own employees in this litigation who claimed that Costco was indefinitely "'discontinuing' Yokohama as a vendor." Of course, Costco's subjective intent is no more dispositive of the issue than would be Yokohama's. (*Grant County Port District No. 9 v. Washington Tire Corp.* (2015) 187 Wash.App. 222, 233 ["Courts interpret what was written rather than intended to be written"].) Thus, Costco's reliance on the deposition testimony of its own employees to support its argument does not defeat the substantial evidence in the record that supports the trial court's finding. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630 ["It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact"].) More important, Costco concedes that "[a] termination notice's actual content determines its effectiveness, not its subjective intent." Here we agree with the trial court that the actual content of the June 1996 Letter notified Yokohama the agreements between the parties would be terminated; "discontinue" is a perfectly good synonym for "terminate." (Webster's 3d New Internat. Dict. (1981) p. 646 ["discontinue" means "to break off: give up: terminate"]; Merriam Webster's Collegiate Dict. (10th ed. 1995) p. 331 ["1. to break the continuity of: cease to operate, administer, use, produce or take 2. to abandon or terminate by legal discontinuance"].) Costco's reliance on the absence of

9

the specific word "terminate" in the June 1996 Letter is therefore unpersuasive.[4]

Costco also asserts that the June 1996 Letter did not comply with the PLA's notice provision, and thus could not terminate the PLA, because it was not addressed to Yokohama's outside counsel and because it may not have been delivered in a sealed envelope. This contention has no merit. The purpose of a notice provision of the type here is to ensure that the appropriate party actually receives the notice. Costco suggests no other purpose, and we can fathom none. In this case, the notice was hand delivered to Yokohama at a meeting attended by Yokohama Executive Vice President James MacMaster. Under the circumstances, the purpose of the notice provision was satisfied and Yokohama has never contended that it did not receive effective notice of termination of the PLA. (*Reynolds Metals Co. v. Electric Smith Constr. & Equipment Co.* (1971) 4 Wash.App. 695, 700 [a party to a contract may waive a provision meant for his benefit]; see also *Wesley N. Taylor Co. v. Russell* (1961) 194 Cal.App.2d 816, 828.)


2. *Yokohama's insurance obligations ceased upon termination*

Costco next argues that even if substantial evidence supports the trial court's finding that the PLA and the VA terminated before the Daer litigation, the court erred in concluding that Yokohama's insurance obligations under those agreements did not continue in force following the agreements' termination. To the contrary, substantial evidence supports the trial court's conclusion that neither the PLA nor the VA required Yokohama to provide insurance coverage for Daer's 2001 product liability claim.

Under fundamental rules of contract interpretation, "the intent of the parties[] controls; such intent must be gathered from the contract as a whole; the intent and

---

[4]     Had Costco instead chosen a word that does not denote a definite end, such as "suspend," its argument would have greater appeal. Further, if, as Costco maintains, it was its intention to stop doing business with Yokohama without terminating the PLA, it was incumbent upon Costco to make that unusually nuanced distinction clear. Having failed to do so, it deprived Yokohama of an opportunity to terminate the PLA pursuant to the notice provisions of that agreement.

10

construction afforded the provision and the whole of the contract must be reasonable so as to carry out, rather than defeat, the purpose of the overall undertaking; and where the language used is unambiguous an ambiguity will not be read into the contract. . . . ” (*Jones v. Strom Const. Co., Inc.* (1974) 84 Wash.2d 518, 520.)  “The contracting parties’ intent is determined by construing the terms of the contract as a whole, in light of the circumstances under which it is made.” (*Postlewait Const., Inc. v. Great American Ins. Companies* (1986) 106 Wash.2d 96, 99-100).  “We must construe a contract to give meaning to every term.”  (*Diamond B Constructors, Inc. v. Granite Falls School Dist.* (2003) 117 Wash.App. 157, 165.)  Where there are no disputed material facts, the contract will be construed by the court as a matter of law.  (*Postlewait Const., Inc. v. Great American Ins. Companies, supra,* at p. 100.)  In the words of the Washington Supreme Court, “‘the allocation of risk and the determination of potential future liability is [to be] based on what the parties bargained for in the contract.  We hold parties to their contracts.’”  (*Alejandre v. Bull* (2007) 159 Wash.2d 674, 686, quoting *Berschauer/ Phillips Const. Co. v. Seattle School Dist. No. 1* (1994) 124 Wash.2d 816, 826.)

Paragraph 10.6 of the PLA states that Yokohama’s indemnity obligations “shall survive termination of the Agreement.”  The PLA does not state, however, that Yokohama’s *insurance* obligations likewise continue after termination of the agreement.  Rather, paragraph 11, entitled “Insurance,” requires Yokohama to “keep in force . . . the insurance coverage specified in Attachment D.”  Attachment D, in turn, provides that “[Yokohama] will provide Certificates of Insurance at all times naming  [Costco and its affiliated companies] as an ‘Additional Insured’. . . ” but only “[*s*]*o long as* [*Yokohama*] *agrees to sell or sells any product to* [*Costco.*]”  As the trial court found, Yokohama ceased selling tires to Costco in 1997, well before the Daer litigation and the insurance tender to Tokio Marine in 2001.

Costco concedes that the phrase “so long as supplier agrees to sell or sells any product to Costco” in Attachment D might be read to support Yokohama’s contention that its insurance obligation terminated upon cessation of sales to Costco.  But the

11

company argues the phrase "must be read together with the remaining language of the same sentence obligating Yokohama to procure insurance 'at all times' 'protecting' both Yokohama and Costco from liability for 'defective design, workmanship or materials' in any tire." We agree the sentence must be read in its entirety, but that does not help Costco. The inclusion of the words "at all times" does not mean that Yokohama was obligated to maintain insurance coverage for some longer period or in perpetuity. Rather, it simply means Yokohama was required to maintain continuous coverage throughout the relevant time period, namely, for "so long as [Yokohama] agrees to sell or sells any product to Costco."

The separate indemnity provision in the PLA supports, not undermines, the conclusion that Yokohama's obligation to provide insurance ceased when it stopped selling tires to Costco. The parties' inclusion of the phrase "shall survive the termination of this agreement" in the indemnity provision establishes that they knew how to unambiguously provide for the continuation of contractual obligations post-termination, when that was their intent. Consequently, their failure to require Yokohama to continue to provide insurance after the termination of the PLA cannot be deemed a mutual oversight. There are simply no grounds for us ignore the actual language—"so long as [Yokohama] agrees to sell or sells any Product to [Costco]"—that specifically limits Yokohama's obligation to provide insurance coverage. (*Diamond B Constructors, Inc. v. Granite Falls School Dist., supra,* 117 Wash.App. 157, 165 ["We must construe a contract to give meaning to every term"].)

We likewise reject any suggestion that the longevity of Yokohama's insurance obligation under the PLA is ambiguous. Costco cites no authority for the proposition that the useful life of a product like a tire renders ambiguous the straightforward language "so long as supplier agrees to sell or sells any Product." "[A]mbiguity will not be read into a contract where it can reasonably be avoided. . . . " (*McGary v. Westlake Investors* (1983) 99 Wash.2d 280, 285.) Thus, the contract means what it says: "So long as [Yokohama] agrees to sell or sells any product to [Costco], [Yokohama] will provide Certificates of

12

Insurance at all times naming [Costco and its affiliated companies] as an 'Additional Insured'. . . . " And Yokohama did not agree to sell or sell any product to Costco in 2001 when Daer suffered injuries in a car accident.

Costco also contends that Yokohama was required to provide insurance coverage under the VA because that contract, unlike the PLA, did not restrict Yokohama's insurance obligation to only those times when it was actively selling tires to Costco. As noted already, however, the tire at issue in the Daer action was a Kirkland Signature tire manufactured and sold pursuant to the terms of the PLA, which contained an integration clause: "This Agreement shall constitute the entire Agreement between the parties with regard to those matters addressed herein." Because the sale of the tire at issue in the Daer litigation was governed solely by the terms of the PLA, Costco's argument relying on the VA fails.

B. *Substantial evidence supports the trial court's finding that Costco was not an additional insured by reason of AON's issuance of an individual vendor endorsement*

Even if it was not an insured party under the blanket endorsement, Costco claims it was an additional insured because AON issued an individual vendor endorsement that specifically named Costco as an additional insured for the 2001 policy year. The trial court found that the insurer, Tokio Marine, was not bound by this "Costco Endorsement" because AON was "only Yokohama's broker," "did not act as an actual agent for Tokio Marine," and "was not the ostensible agent of Tokio Marine." The evidence presented at trial provides sufficient support for these factual findings.

Our analysis of Costco's argument requires an understanding of certain terms referred to by the parties, as well as the evidence presented at trial concerning the parties' business interactions. We therefore discuss both.

"A 'certificate of insurance' is a document issued by an insurer or an authorized agent *evidencing* the existence of insurance." (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) § 3:70.) It is "often required in

13

transactions between the insured and third persons." (*Id.* at § 3:70.1.) For example, a certificate of insurance may be used to show that one party is an "*additional insured* under the other's insurance policy." (*Id.* at § 3:70.3.) Insurance Code section 384 requires a certificate of insurance provided as evidence of insurance (in lieu of an actual copy of the policy) to include language to the following effect: "This certificate or verification of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policies listed herein. Notwithstanding any requirement, term, or condition of any contract or other document with respect to which this certificate or verification of insurance may be issued or may pertain, the insurance afforded by the policies described herein is subject to all of the terms, exclusions and conditions of such policies." (Ins. Code, § 384, subd. (a).)

Insurance Code section 10274 defines "endorsement" to mean "any amendment, change, limitation, alteration or restriction of the printed text of a policy by a rider upon a separate piece of paper made a part of such policy." Unlike a certificate of insurance, "[a]n endorsement modifies the basic insuring forms of the policy and is an integral part of the policy. . . . An endorsement can expand or restrict the coverage otherwise provided by the policy. If there is any conflict between an endorsement and body of a policy, the endorsement controls. . . . " (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436.)

An insurance broker is "a person who, for compensation and on behalf of another person, transacts insurance . . . with, *but not on behalf of*, an insurer." (Ins. Code, § 33, emphasis added.) An insurance agent, by contrast, is a person authorized, by and on behalf of an insurer, to sell insurance on behalf of an insurance company. (*American Way Cellular, Inc. v. Travelers Property Casualty Co. of America* (2013) 216 Cal.App.4th 1040, 1052 [insurance agents must be licensed by the commissioner of insurance and must be authorized by an insurance carrier to transact business, evidenced by the filing of a notice of agency appointment].) Thus, while an insurance agent represents the insurer in transacting business with the general public, and has the

14

authority to bind the insurer on coverage, a broker generally has no such authority. (*Douglas v. Fidelity National Ins. Co.* (2014) 229 Cal.App.4th 392, 410-411.)

A person's status as an agent or broker, however, is not solely determined by the labels used, but also by his or her conduct. (*Maloney v. Rhode Island Ins. Co.* (1953) 115 Cal.App.2d 238, 245 ["The actual relationship is determined by what the parties do and say, not by the name they are called"].) "An insurer, as a principal, may be vicariously liable for the [acts] of its agent if the insurer directed or authorized the agent to perform the . . . acts, or if it ratifies acts it did not originally authorize." (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1118.)

It is undisputed that AON was Yokohama's insurance broker. Costco contends, however, that AON was also acting as the actual agent of Tokio Marine and could therefore bind the insurer when it provided Costco with the Costco Endorsement in January 2001. Costco argues in the alternative that AON was Tokio Marine's ostensible agent. Costco asserts that the trial court's finding that AON was not an agent of Tokio Marine (actual or ostensible) was unsupported by the evidence.

*General principles of agency*

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) "An agency is either actual or ostensible." (Civ. Code, § 2298.) "An agency is actual when the agent is really employed by the principal." (Civ. Code, § 2299.) "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300.) Thus, ostensible agency is a form of vicarious liability. (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403.)

"Agency is generally a question of fact. [Citations.] Where conflicting evidence of agency is presented, we review the trial court's determinations for substantial evidence. [Citation.]" (*Van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th

15

549, 571 (*Van't Rood*).) "When the essential facts are not in conflict and the evidence is susceptible to a single inference, the agency determination is a matter of law for the court. [Citation.]" (*Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 960.) Here, while all the facts may not be in dispute, many of the inferences to be drawn from them are. Consequently, we review the trial court's conclusions regarding the agency relationship between AON and Tokio Marine for substantial evidence.

*Actual agency*

Actual or true "'"[a]gency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." [Citation.] "The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control." [Citation.]' (*Edwards v. Freeman* (1949) 34 Cal.2d 589, 592, quoting Restatement, Agency, § 1.) Thus, the 'formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship. . . . ' [Citation.]" (*Van't Rood, supra,* 113 Cal.App.4th at p. 571.)

"Actual agency typically arises by express agreement. (See 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency & Employment, § 36, pp. 49-50; see also, e.g., *Naify v. Pacific Indemnity Co.* (1938) 11 Cal.2d 5 [actual agency must rest on agreement or consent].)" (*Van't Rood, supra,* 113 Cal.App.4th at p. 571.) An actual agency relationship may also be created informally so long as there is conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other under the latter's direction. (*Malloy v. Fong* (1951) 37 Cal.2d 356, 372.) "Absent mutual consent, therefore, there can be no agency." (*Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 91.)

Actual agency may also be created when the principal, in the absence of a prior agreement with the agent, ratifies the agent's conduct by accepting its benefits. (Civ.

16

Code, § 2307; see 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency & Employment, § 95, p. 142.)  "Ratification is possible only when the person whose unauthorized act is to be accepted purported to act as agent for the ratifying party." (*Ibid.*)

Costco acknowledges that Tokio Marine and AON did not expressly agree to a principal-agent relationship, but claims that their conduct manifested their intention to create an actual agency.  This conduct, according to Costco, consisted of Tokio Marine "allowing" AON to issue certificates of insurance and individual vendor endorsements as evidence of insurance.  However, this evidence fails to establish the requisite meeting of the minds between Tokio Marine and AON, an essential element of actual agency. (*Van't Rood, supra,* 113 Cal.App.4th at p. 571 [actual agency must rest on agreement or consent].)

Tokio Marine's underwriter, Lisa Christensen, testified that pursuant to a "running understanding" she had with AON, she routinely received from AON copies of certificates of insurance together with individualized vendor endorsements that AON had issued to Yokohama's customers.  She did not object to the absence of the words "where required by contract" on these individual endorsements, explaining:  "The reason why we issue a blanket vendor endorsement with the wording, 'where required by written contract' is to allow the broker, not—and the client not to have to give us an exhaustive list of everybody that they have a contractual relationship with to provide this coverage. The broker is then allowed, if the other organization requires it, to issue a piece of paper evidencing additional insured vendor or [*sic*] coverage.  So I did not object to it.  It's merely evidence of insurance that the broker was allowed to provide."  The factual issue presented for the trial court's resolution was whether Tokio Marine's inaction upon receipt of AON-issued individual vendor endorsements manifested the parties' acceptance of an actual agency relationship.

Substantial evidence supports the trial court's finding that such an intention was neither manifested by Tokio Marine nor accepted by AON.  The certificates and

17

endorsements that AON routinely sent out as Yokohama's broker were not issued at Tokio Marine's insistence or for its benefit, but at Yokohama's request in order to satisfy its vendors that it was in compliance with applicable insurance requirements. Thus, Tokio Marine was neither asked nor required to act at all. Furthermore, there is no evidence that AON understood Tokio Marine's acquiescence in AON's provision of evidence of insurance to Yokohama's vendors to be a request that AON act on Tokio Marine's behalf for that purpose. Rather, the only evidence concerning AON's intentions with respect to its preparation of certificates of insurance and vendor endorsements was Lisa Christensen's testimony on the "running understanding" between herself and AON. That understanding was that AON was merely providing evidence of insurance on behalf of its client Yokohama, based on its own knowledge as the producer of the Policy. The record reveals no understanding, sufficient to disturb the trial court's conclusion to the contrary, that AON was given authority to modify insurance policies on Tokio Marine's behalf.

Costco's additional theory of actual agency based on Tokio Marine's alleged ratification of AON's actions is likewise unsupported by the evidence. Agency by ratification contains two components: the agent must purport to represent the principal, and the principal must ratify and benefit from the agent's actions. (See 3 Witkin, Summary of Cal. Law, *supra*, Agency & Employment, § 95, p. 142 and cases cited therein.) As explained above, evidence in the record concerning AON's intentions when preparing the certificates and endorsement is sufficient to establish that it was merely providing evidence of insurance, and not creating new coverage under the Policy. Thus, there is no evidence that, in issuing these documents to Costco, AON purported to act as Tokio Marine's agent to create coverage. (See *Emery v. Visa Internat. Service Assn., supra,* 95 Cal.App.4th at pp. 961-962 [no ratification of an agency relationship shown by Visa's failure to stop foreign merchants from using the Visa logo].) In addition, Costco failed to identify any benefit accruing to Tokio Marine based on AON's conduct. It therefore failed to establish an actual agency by ratification.

18

Costco also argues that by permitting AON to provide evidence of insurance on the insurer's behalf, Tokio Marine made AON its agent for that limited purpose. That is, even if Tokio Marine did not authorize AON to modify the Policy through the issuance of an individual vendor endorsement, its consent to AON's issuance of evidence of insurance cloaked AON with the apparent authority to modify the Policy. "'If a principal by his acts has led others to believe that he has conferred this authority upon his agent, he cannot be heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to confer such power.' (*Safeway Stores v. King Lumber Co.* [(1941)] 45 Cal.App.2d 17, 22.)" (*Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 914.) Costco concludes that because it reasonably believed that AON possessed the authority to modify the Policy by issuing an individual endorsement, the insurer is "bound by the act as having ratified it by implication." (*StreetScenes v. ITC Entertainment Group, Inc.* (2002) 103 Cal.App.4th 233, 242.) In order to prevail on this theory, Costco was required to prove that, although AON acted in excess of any grant of actual authority from Tokio Marine, Costco justifiably relied on AON's apparent authority. (*Yanchor v. Kagan* (1971) 22 Cal.App.3d 544, 549.) As we explain in our discussion of ostensible agency below, the trial court's finding to the contrary is supported by substantial evidence.

*Ostensible Agency*

The elements of ostensible agency are well-established: "Before recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief. [Citations.] Ostensible agency cannot be established by the representations or conduct of the purported agent; the statement or acts of the principal must be such as to cause the belief the agency exists. [Citations.] "'Liability of the

principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations by the principal, justifiable reliance by a third party, and change of position from such reliance resulting in injury. [Citation.]" [Citation.]' [Citation.]" (*J.L. v. Children's Institute, Inc., supra,* 177 Cal.App.4th at pp. 403-404; accord, *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399.) Because the doctrine of ostensible agency imposes vicarious liability on the purported principal based on the third party's reasonable belief in the agent's authority, the critical facts for our purposes are those known to and relied on by Costco at the time it received the Costco Endorsement. (*Goldman v. SunBridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173 ["Agency . . . 'can be founded on ostensible authority, that is, some intentional conduct or neglect on the part of the alleged principal *creating a belief in the minds of third persons that an agency exists*, and a reasonable reliance thereon by such third persons'"], emphasis added.)

The record supports the trial court's conclusion that Costco did not establish the elements of ostensible agency. Costco does not satisfy the first requirement of ostensible agency because it fails to cite evidence that when dealing with AON, it had a reasonable belief that AON was acting as Tokio Marine's agent. Indeed, Costco offers no rationale that would explain why Costco would so conclude. Costco knew that AON was Yokohama's broker. Yokohama, not Tokio Marine, agreed in the PLA to provide evidence of insurance. Costco, through IDS, asked Yokohama—not Tokio Marine or its underwriter—to provide evidence of insurance. The record is devoid of evidence that Tokio Marine made any representation to Costco, by word or deed, regarding AON's authority to act on Tokio Marine's behalf. Thus, Costco's claimed belief in AON's authority to act as an agent was not attributable to any act or neglect of Tokio Marine. To be sure, Costco claims to have relied on Tokio Marine's "neglect" in "allowing" AON to issue individual vendor endorsements to prove ostensible agency. There is no evidence in the record, however, that Costco was aware of the "running understanding" between AON and Tokio Marine, i.e., AON's practice of forwarding copies of certificates of

20

insurance and endorsements to Lisa Christensen.  In the absence of such evidence, Costco did not establish that Tokio Marine caused it to reasonably believe that AON was authorized to create coverage via the Costco Endorsement on Tokio Marine's behalf.

Costco also failed to establish the elements of justifiable reliance.  When IDS sent the deficiency letters to Yokohama, it did not request or require Tokio Marine to issue an individual vendor endorsement to the Policy; rather, it stated, "Please have your Insurance agent mail a new Certificate of Insurance."  Had AON simply done as instructed, Yokohama would have been in compliance with the terms of the (then-terminated) PLA, under which Yokohama agreed "to provide [Costco] with Certificates of Insurance evidencing the insurance coverage specified in Attachment D hereto."  Instead, AON included with the certificate of insurance an individual vendor endorsement naming Costco.  The evidence entitled the trial court to conclude that all parties involved (Costco through its agent IDS, Yokohama through its agent AON, and Tokio Marine) understood the Costco Endorsement forwarded to IDS in response to its deficiency letters to be nothing more nor less than evidence of the blanket vendors endorsement attached to the Policy.  Costco does not identify any actions or evidence demonstrating it believed that it had obtained coverage which it did not already possess under the blanket endorsement when IDS filed the individual endorsement with Yokohama's insurance records.

Costco also fails to explain what it would have done differently had it known that AON was not acting on Tokio Marine's behalf in issuing the Costco Endorsement, and

21

thus fails to prove it justifiably relied on AON as an ostensible agent of the insurer.[5] By its own admission, Costco believed in 2001, and still believes today, that it had coverage under the blanket vendors endorsement; thus, it had no need of an individual endorsement. Indeed, the evidence presented at trial established no reason or justification for issuing Costco or any other vendor an individual endorsement that was not duplicative of the coverage provided by the blanket endorsement. Thus, if Costco were entitled to coverage under the blanket endorsement, the individual endorsement would be unnecessary; conversely, if Costco were not entitled to coverage under the blanket endorsement because there was no contract requiring it, then Costco had no contractual right to, and therefore no reasonable expectation of, coverage under an individual endorsement. In sum, substantial evidence supports the trial court's finding that AON was not Tokio Marine's ostensible agent.

Our holding on the question of actual and apparent authority is necessarily confined to the facts presented here. By concluding that substantial evidence supports the trial court's conclusion that Yokohama's insurance broker lacked actual or apparent authority to issue the Costco Endorsement on behalf of Tokio Marine, we need not and do not decide that an additional insured cannot justifiably rely under any circumstance on an endorsement received from an insurance broker that modifies coverage. Rather, we simply conclude Costco failed to establish that AON was acting as Tokio Marine's agent

---

[5]   Costco asserts that, had it not received the Costco Endorsement from AON, it would have changed Yokohama's status to "inactive," thereby reducing the fee it paid to IDS for tracking Yokohama's insurance compliance. This claim, even if true, does not establish that it justifiably relied on AON's issuance of the Costco Endorsement to its detriment. To make such a showing, Costco must prove that it would have acted to avoid the harm it suffered—the lack of a valid individual vendor endorsement—by reason of AON appearing to act as Tokio Marine's agent. Of course, the obvious way to avoid the detriment of lack of insurance is to procure alternate insurance under a different policy. Costco did not argue, much less prove, it would have obtained alternate insurance to protect itself from prospective claims had it known when it received the Costco Endorsement that it would not be covered as an additional insured vendor under the Policy.

22

in extending coverage via the Costco Endorsement because the record does not show the parties believed, at the time the endorsement was forwarded to Costco, that it amended the Policy to create coverage which was not already in place by reason of the blanket endorsement.

C. *The trial court did not err in ruling that Tokio Marine's response to a request for admission is not dispositive of the issue of coverage*

Costco maintains that Tokio Marine's admission that the Costco Endorsement was "part of" the Policy necessarily means Costco was covered under the Policy. From this proposition, Costco concludes that the trial court erred in failing to give dispositive effect to the admission, arguing the trial court "essentially found that the admission was non-binding simply because it was incorrect and did not 'accurately reflect[] the truth.' (CT-IV 7280)."

We review the trial court's determination of the legal effect to be given to Tokio Marine's responses to a request for admission for an abuse of discretion. (*Milton v. Montgomery Ward & Co., Inc.* (1973) 33 Cal.App.3d 133, 138.) "In applying the abuse of discretion standard of review, it is not the role of the appellate court to substitute its own view as to the proper decision. [Citation.] The trial court's discretion, however, 'is not unlimited and must be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]' (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, internal quotation marks omitted.)" (*Parkview Villas Ass'n, Inc. v. State Farm Fire and Cas. Co.* (2005) 133 Cal.App.4th 1197, 1208.) "Under that standard, there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the permissible range of options set by the applicable legal criteria. [Citations.]" (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 957.)

23

Costco propounded requests for admission which asked Tokio Marine to admit the genuineness of certain documents, including the Costco Endorsement. A different request for admission asked Tokio Marine to admit the truthfulness of a number of propositions including, in RFA 8, "That the ADDITIONAL INSURED – VENDORS ENDORSMENT is part of the TOKIO MARINE PRIMARY POLICY." Tokio Marine responded to that request as follows: "Tokio Marine – U.S. Branch admits that the ADDITIONAL INSURED – VENDORS ENDORSMENT Form CG 20 15 11 88 (1986, 1988) is part of the TOKIO MARINE PRIMARY POLICY."

Prior to trial, Costco filed a motion in limine "to exclude evidence that the ADDITIONAL INSURED – VENDORS ENDORSEMENT naming Costco is not 'part of' the primary policy and was due to 'mistake.'" In that motion, Costco argued that Tokio Marine should be bound by its admission, and that any contrary evidence should be excluded. Tokio Marine opposed the motion, calling it an improper motion for summary adjudication of Tokio Marine's defense of mutual mistake of fact. Tokio Marine argued that its steadfast insistence that the Costco Endorsement did not afford Costco coverage for the Daer litigation, as evidenced in answers to other requests for admission issued concurrently with the response to RFA 8, belied the contention that the admission conclusively established the issue of coverage. The trial court denied Costco's motion, stating "it's clear that the court has discretion to determine what the effect of this admission is. And it's to do so in light of all the evidence that is presented in the case."

At the conclusion of the trial, after hearing all of the evidence presented, the trial court determined that Costco was not an additional insured under the Policy. In its statement of decision, the court stated, "Plaintiff makes much of one of defendant's responses to a request for admission. The trial court retains broad discretion to determine the effect of a party's admission. The court may determine whether it accurately reflects the truth in light of other evidence in the case. (*Fredericks v. Filbert Co.* (1987) 189 Cal.App.3d 272, 278.) The court has considered the discovery response in the context of

24

all the evidence presented, including the other discovery responses contained in the same set [of] requests, and does not find the response is dispositive as plaintiff argues."

"A matter admitted in response to a request for admission is conclusively established against the party making the admission, unless the court has permitted amendment or withdrawal of the admission. (Code Civ. Proc., § 2033, subd. (n).)" (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1272.) "Although admissions are dispositive in most cases, a trial court retains discretion to determine their scope and effect." (*Fredericks v. Filbert Co.*, *supra*, 189 Cal.App.3d at p. 277.) In addition, "[t]rial courts have the discretion to consider parol evidence that explains an admission." (*Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 260.) "[A]fter a matter is deemed admitted, the scope and effect of the admission must be determined by the trial court. The trial court has broad discretion in determining the admissibility and relevance of evidence. [Citations.]" (*Milton v. Montgomery Ward & Co., Inc.*, *supra*, 33 Cal.App.3d at p. 138.)

Applying the foregoing principles to the circumstances of this case, we find no abuse of discretion in the trial court's ruling. First, the trial court recognized that it had discretion to determine the scope and effect of the admission, and thus chose to defer its ruling so that it could hear the evidence and thereafter decide the scope and effect that the admission should be given. That ruling was a proper exercise of the court's discretion under *Fredericks v. Filbert Co*. The trial court determined, on a full evidentiary record, that Costco was not an additional insured under the Policy, and thus was not entitled to a defense of Daer's claims, a finding supported by substantial evidence. Granting Costco the relief it seeks would run afoul of the court's admonition in *Fredericks v. Filbert* that "the court's discretion to determine the admissibility and relevance of evidence [ensures] that a trial accurately reflects events rather than distorts them." (*Id.* at p. 278.) Moreover, a reversal of the trial court's ruling on the effect to be given to the admission, would not serve the primary purpose of requests for admission: "to set at rest triable

25

issues so that they will not have to be tried." (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3rd 500, 509.)

Finally, Costco identifies as the prejudice flowing from the trial court's faulty ruling that "the court [] consider[ed] and rel[ied] upon inadmissible evidence[6] to erroneously conclude that the 'Costco' endorsement was both not a 'part of' and was not an enforceable 'modification' of the Primary Policy." However, the California Constitution prohibits the reversal of a judgment based on the improper admission of evidence "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) We do not so conclude, and we are therefore precluded from reversing the judgment based on the trial court's refusal to rule that Tokio Marine's response to RFA 8 was dispositive of the issue of Costco's coverage under the Policy.

D. *Costco's additional arguments on appeal*

Because we determine that the record supports the trial court's conclusion that Costco was not an additional insured under the Policy, the court properly entered judgment in favor of Tokio Marine. Consequently, we have no occasion to consider Costco's additional arguments on appeal.

---

[6]     By "inadmissible evidence" Costco apparently means evidence that would have been excluded had the trial court granted the motion in limine.

26

DISPOSITION

The judgment is affirmed.  Tokio Marine is to recover its costs of appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We concur:



TURNER, P. J.



KRIEGLER, J.